**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>Zachary C. Anderson and Faith M. Anderson,<br><br>Debtors. | Case No.: 25-30426<br><br>Chapter 7 |
| Agrifund, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Zachary C. Anderson,<br><br>Defendant. | Adversary No.: |

## ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Plaintiff Agrifund, LLC ("Plaintiff"), for its Complaint to determine the dischargeability of debt, states as follows:

### PARTIES

1. The Plaintiff is a limited liability company organized under the laws of the State of Delaware and authorized to transact business in the State of North Dakota with its principal office located at 16415 Addison Rd., Ste 170, Addison, TX 75001.

2. The Defendant Zachary C. Anderson is a resident of West Fargo, North Dakota.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 The claims asserted herein arise under the Bankruptcy Code and are related to the above-captioned bankruptcy case.

4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. On or about September 25, 2025, the Defendant Debtor filed a Petition for Relief under Chapter 7, Title 11, United States Code.

## GENERAL ALLEGATIONS

7. Zachary C. Anderson ("Defendant") is obligated to Plaintiff pursuant to the terms of the following instruments:

a. Demand Promissory Note dated as of March 3, 2022, in the original principal sum of $1,848,036.00 (as amended, the "2022 Note"). Pursuant to a Modification Agreement dated February 23, 2023, the maturity date of the 2022 Note was extended from February 15, 2023 to May 16, 2023. True and correct copies of the 2022 Note and 2022 Modification Agreement are attached as **Exhibit A** and incorporated herein by reference.

b. Demand Promissory Note dated as of February 20, 2023, in the original principal sum of $1,749,488.00 ("2023 Note"). The 2023 Note required payment of all outstanding principal plus all accrued unpaid interest upon demand but no later than March 15, 2024. A true and correct copy of the 2023 Note is attached as **Exhibit B** and incorporated herein by reference. (Together, the 2022 Note and 2023 Note are referred to hereinafter as the "Notes").

8. To secure the indebtedness represented by the Notes, Defendant executed and delivered to Plaintiff a Security Agreement dated March 3, 2022 (the "2022 Security Agreement"). A true and correct copy of the 2022 Security Agreement is attached as **Exhibit C** and incorporated herein by reference. Under the 2022 Security Agreement, the

Defendant pledged the following personal property to Plaintiff as security for the Notes (the "Collateral"):

Any and all accessions, additions, replacements, payments for participation in any state or federal farm programs and substitutions (including rights under Commodity Credit Corporation programs, FSA payment in kind, Federal Crop Insurance Program or any general intangibles or programs); all records of any kind related to any of the foregoing; all proceeds (including insurance, general tangibles, general intangibles, rents and account proceeds). Any and all now owned and hereafter acquired machinery, equipment, furniture, furnishings and fixtures, of every type and description together with all accessories, attachments, accessions, substitutions, replacements and additions thereto, whether added now or later. Any and all crops/farm products of every kind and description, planted or growing, or to be planted or grown including but not limited to the following: State of Minnesota Benton County FSN# 982, 3647, 6310, 6281, 4533, 407, 6335, 6304, 6280, 6311, 6332, 351, 251, 4639, 4840, 6314, 3702, 1185, 6305, 6309, 3899, 459. Douglas County FSN# 118, 3420. Mille Lacs County FSN# 5604. Sherburne County FSN# 4024, 3057, 2845, 304, 232, 4590.

9. Defendant also executed and delivered a Security Agreement dated February 20, 2023 (the "2023 Security Agreement"). A true and correct copy of the 2023 Security Agreement is attached as **Exhibit D** and incorporated herein by reference.

10. Plaintiff perfected its security interests in the Collateral by filing a UCC financing statement with the Minnesota Secretary of State on March 8, 2022. True and correct copies of the Minnesota Secretary of State financing statements are attached as **Exhibit E** and incorporated herein by reference.

11. Prior to the Petition Date, Defendant defaulted under the Notes. Plaintiff commenced Case No. 05-CV-24-1032, *Agrifund, LLC v. Zachary Anderson et. al.,* in the Minnesota District Court for Benton County (the "State Court"). Plaintiff obtained a judgment against Defendant in the amount of $2,137,675.31 on August 16, 2024. The State Court also ordered Defendant to turnover all Collateral to Plaintiff. A true and correct copy of the Findings of Fact, Conclusions of Law, and Order for Judgment and Judgment dated August 16, 2024, and the Notice of Entry and Docketing of Judgment (the "State Court Order") are attached as **Exhibit F** and terms of the same incorporated herein by reference.

12. Defendant testified under oath that he first became the "operator" of the Anderson family farm in 2021 because other members of the family were not able to obtain credit. However, Defendant's role and responsibilities did not change when he became the "operator" other than the fact that he was the one signing the loan documents with Plaintiff and crop insurance documents. Defendant testified he was essentially a farm hand and did what his uncle, Robert Anderson told him to do.

13. On or about November 22, 2021, Robert Anderson pled guilty to a charge of conversion of Farm Service Agency – CCC security in the United States District Court for the District of Minnesota, Case No. 21-CR-48-NEB ("Robert Criminal Case"). On information and belief, Robert Anderson was not permitted to obtain a loan from the Farm Service Agency for a period of three years as a term of his probation. Additionally, Robert Anderson was required to obtain approval from his probation officer to incur new credit. A true and correct copy of the Judgment in the Robert Criminal Case is attached as **Exhibit G** and incorporated herein by reference.

14. Because Robert Anderson was not able to obtain financing for his farming operations in 2023 because of the prohibition on obtaining loans from the Farm Service Agency and/or approval from his probation officer for new credit and/or due to his criminal conviction, Robert Anderson and Defendant agreed to work together to obtain credit from Plaintiff in Defendant's name rather than under Robert Anderson's name.

15. On information and belief, the following crops were stored on the Anderson family farm as of February 15, 2024:

For Sherburne County:

a. 112,720.40 bushels of corn were stored in Bin 1;

b. 9,477.40 bushels of corn sold; and

c. Approximately 62,237 bushels of corn unharvested.

For Benton County:

d. 239,585.50 bushels of corn were stored in Bins 1-3.

For Mille Lacs County:

e. 12,949.60 bushels of corn were stored in Bin 1.

In sum, there were 365,255.50 bushels of corn in Defendant's custody, possession, and control constituting the Defendant's 2023 crop (which was Plaintiff's Collateral) in February 2024.

16. Defendant's bankruptcy schedules filed in September 2025 indicated 230,000 bushels of corn remained from the 2023 crop. Defendant has failed and/or refused to explain the discrepancy of what happened to the additional 135,255.50 bushels of corn that were present in February 2024.

17. As of September 25, 2025 (the "Petition Date"), the Defendant owed the sum of $2,375,019.42. Plaintiff has received two post-petition payments from sale of the remaining 2023 corn crop and applied them to Defendant's outstanding balance, resulting in Plaintiff's claim amount of $2,143,874.45.

18. The actions of Defendant constituted false pretenses, false representations, and actual fraud as a result of which Defendant obtained money and property from the Plaintiff which was subject to Plaintiff's security interest. The false pretenses, false representations, and actual fraud of the Defendant consisted of, but is not limited to, the following:

a. Obtaining money and property from Plaintiff by falsely representing that Defendant was the principal behind the subject farming operation;

b. Concealing Plaintiff's Collateral;

c. Selling Plaintiff's Collateral without remitting proceeds to Plaintiff;

d. Failing to disclose receipt of proceeds from sale of the Collateral to Plaintiff; and

e. Converting Plaintiff's Collateral to the Defendant's (or his family members) benefit.

19. The actions of the Defendant referenced above constitute willful and malicious injury by the Defendant to Plaintiff and the Collateral of Plaintiff. At all times material, the Defendant knew his remaining resources would not allow payment in full of the indebtedness to Plaintiff and he would not be able to produce or acquire additional assets to which Plaintiff's security interest would attach so as to fully restore Plaintiff's secured position. The conduct of the Defendant was intentional and designed to benefit only the Defendant (and his family members) and to damage Plaintiff. At all times material, the Defendant was aware his actions violated his agreements with Plaintiff and Plaintiff's rights in its Collateral, impaired Plaintiff's collateral position and would result in loss and damage to Plaintiff. The Defendant intended such consequences or proceeded with reckless disregard of the fact that such consequences were certain to result from his actions. In all respects the Defendant's actions were unjustified.

20. Plaintiff demands an accounting from Defendant with respect to all of the crop collateral of Plaintiff.

21. WHEREFORE, Plaintiff prays for entry of judgment against the Defendant as follows:

A. For a determination of the Defendant's obligations to the Plaintiff and all costs and attorneys' fees incurred by Plaintiff represent a debt non-dischargeable under 11 U.S.C. § 523(a)(2) and (a)(6) in the pending Chapter 11 proceeding or any further, subsequent, or other insolvency or reorganization proceeding filed by the Defendant under the Bankruptcy Code or any successor legislation.

B. For an accounting by the Defendant with respect to Plaintiff's crop collateral.

C. For its costs, disbursements and reasonable attorneys' fees incurred herein.

D. For such other and further relief as this Court deems just and equitable.

Dated this 22nd day of June, 2026.

**VOGEL LAW FIRM**

BY: */s/ Caren W. Stanley*

Caren W. Stanley (#06100)
cstanley@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: 701.237.6983
ATTORNEYS FOR AGRIFUND, LLC

4901-4401-2983 v.1

# EXHIBIT A

**(2022 Note)**

EXHIBIT
A

# DEMAND PROMISSORY NOTE
(Agricultural - Draw)

**DATE AND BORROWERS.** This Demand Promissory Note is dated 3/3/2022 and is made by Zachary Charles Anderson

(each and all of such Persons, singularly and jointly and severally, "**Borrower**"). Each Person signing this Demand Note as a "Borrower" shall be a Borrower hereunder and shall be liable with respect to the Obligations on a joint and several basis with each other Borrower and each other Credit Party. Use of the singular "Borrower" shall mean and refer to each Borrower, singularly or collectively, as the context may require.

1. **DEFINITIONS.** Capitalized terms used, but not defined herein, shall have the meanings given such terms under the Loan Agreement (as defined below). In addition to any other terms defined herein, the following terms, as used herein, shall have the following meanings:
   - A. **Demand Note.** Demand Note means this Demand Promissory Note, as the same may be amended, restated, supplemented, or otherwise modified or replaced or substituted from time to time.
   - B. **Holder.** Holder means Lender or any other Person or Persons having an interest in this Demand Note or any of the indebtedness evidenced hereby.
   - C. **Interest Rate.** Interest Rate means 9.50 % per annum.
   - D. **Lender.** Lender means Agrifund, LLC, a Delaware limited liability company.
   - E. **Maturity Date.** Maturity Date means 2/15/2023.
   - F. **Loan Agreement.** Loan Agreement means that certain Commercial Loan Agreement dated as of 3/3/2022 by and between Lender and Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.
   - G. **Stated Principal Amount.** Stated Principal Amount means $ 1,848,036.00.
2. **PROMISE TO PAY.** For value received, Borrower promises to pay to the order of Holder amounts advanced from time to time under the terms of this Demand Note and the other Loan Documents up to the Stated Principal Amount or such other amount as may be owing by Borrower to Holder under the Loan Documents (the "**Principal**"), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Demand Note is paid in full.
3. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Demand Note at the Interest Rate.
   - A. **Interest After Default.** At any time that any Event of Default exists the Interest Rate shall automatically and without notice to Borrower be increased by 6.00% per annum.
   - B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Demand Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to Borrower or such other Person who might be lawfully entitled thereto.
   - C. **Statutory Authority.** The amount assessed or collected on this Demand Note is authorized by the Louisiana usury laws under La. Civ. Code art. 2924 and La. Rev. Stat. Ann. §§ 9:3500 et. Seq.
   - D. **Accrual.** Interest on this Demand Note shall be calculated on the basis of a year of 365 or 366 days, as applicable, for the actual number of days elapsed.
4. **PAYMENT. BORROWER ACKNOWLEDGES AND AGREES THAT THE OBLIGATIONS EVIDENCED BY THIS DEMAND NOTE ARE DUE AND PAYABLE ON DEMAND AND THAT HOLDER MAY MAKE DEMAND FOR PAYMENT OF SUCH OBLIGATIONS AT ANY TIME, WITH OR WITHOUT THE OCCURRENCE OF ANY OTHER FACT, CIRCUMSTANCE, OR CONTINGENCY AND FOR ANY REASON. BORROWER AGREES TO PAY ALL OBLIGATIONS ON THE EARLIER TO OCCUR OF (A) THE DATE ON WHICH HOLDER DEMANDS PAYMENT AND (B) THE MATURITY DATE.** If any payment is due on a date which is not a Business Day, then such payment shall be due on the immediately following Business Day.
5. **PREPAYMENT.** Borrower may prepay this Loan in full or in part at any time, without premium or penalty.
6. **SECURITY.** The Obligations under this Demand Note and all other Obligations are secured by the Security Documents.
7. **WAIVERS AND CONSENT.** To the maximum extent permitted by law, Borrower waives protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, notice of dishonor, and any and all other defenses to payment (other than the defense of Payment in Full) and notices.
8. **NO WAIVER.** No failure or delay on the part of any Holder to exercise any right under this Demand Note or any other Loan Document or under applicable law shall operate as a waiver hereof or thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.
9. **SUCCESSORS AND ASSIGNS.** This Demand Note shall be binding upon Borrower and Borrower's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Holder and its successors and assigns. Borrower may not assign any of its rights or obligations under this Demand Note or the other Loan Documents.
10. **ADDITIONAL WAIVERS.** To the extent legally permitted, Borrower additionally waives:
    - A. The benefit of appraisal as provided under Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

**B.** The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure;

**C.** The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

**D.** All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

**11. EFFECT OF SIGNATURES.** By signing, Borrower agrees to the terms set forth in this Demand Note and certifies that Borrower has received a copy of this Demand Note and that it has completely read and understands this Demand Note.

**IN WITNESS WHEREOF**, each Borrower has executed and delivered this Demand Note as of the date first above written:

Borrower:

Address for Notices:
Zachary Charles Anderson
15221 82nd ST.
Becker, MN 55308

Zachary Anderson
Zachary Charles Anderson

# MODIFICATION AGREEMENT

**DATE AND PARTIES.** This Modification Agreement is dated as of February 23,2023 and is by and between or among AGRIFUND, LLC, a Delaware limited liability company ("Lender"), and each of the Persons (as defined below) party hereto as a "Borrower" (each and all of such Persons, singularly and jointly and severally, "**Borrower**") and each of the other Persons party hereto as a "Guarantor" or a "**Credit Party**" (each and all of such Persons, together with Borrower, each, a "Credit Party" and, collectively, the "**Credit Parties**").

1. **DEFINITIONS AND RELATED TERMS.** Capitalized terms used, but not defined herein, shall have the meanings given such terms under the Loan Agreement (as defined below). In addition to any other terms defined herein, the following terms, as used herein, shall have the following meanings:

   A. **Agreement.** Agreement means this Modification Agreement, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   B. **Extension Fee.** Extension Fee means a fee in the amount of $14,700.00.

   C. **Demand Note.** Demand Note means that certain Demand Promissory Note dated as of March 3, 2022 and made by Borrower to the order of Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   D. **Loan Agreement.** Loan Agreement means that certain Commercial Loan Agreement dated as of March 3, 2022 by and among Borrower and Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   E. **Security Agreement.** Security Agreement means that certain Security Agreement dated as of March 3, 2022 by and among Debtor and Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   F. **UCC.** UCC means the Uniform Commercial Code as enacted in the Jurisdiction or in any other applicable jurisdiction.

   G. **Additional UCC Terms.** Any term used in this Agreement or in any financing statement filed in connection herewith which is defined in the UCC and not otherwise defined in this Agreement or in any other Loan Document shall have the meaning given to the term in the UCC, including, without limitation, Accession, Account Debtor, Chattel Paper, Account, Commercial Tort Claim, Deposit Account, Document, Electronic Chattel Paper, Equipment, Fixture, Instrument, Inventory, Investment Property, Letter-of-Credit Right, Proceeds, Supporting Obligation, and Tangible Chattel Paper.

2. **RULES OF CONSTRUCTION.** Whenever used, the singular includes the plural and the plural includes the singular.

3. **MODIFICATIONS TO LOAN DOCUMENTS.**

   A. **Modifications to Loan Agreement.** The Loan Agreement is **not** being amended.

   B. **Modifications to Demand Note**. Subject to the terms and conditions set forth in this Agreement, the Demand Note is amended as follows:

   The definition of Maturity Date in the Demand Note is amended so that it reads:

   Maturity Date. Maturity Date means May 16, 2023.

   The definition of Stated Principal Amount in the Demand Note is amended so that it reads:

   Stated Principal Amount. Stated Principal Amount means $1,862,737.00.

   C. **Modifications to Security Agreement.** The Security Agreement is **not** being amended.

4. **CERTAIN FEES.** As consideration for the modifications set forth herein, Borrower agrees to pay Lender the Amendment Fee. Such fee shall be due and payable on the date on which this Agreement becomes effective. Borrower authorizes and directs Lender to make an Advance under the Loan Agreement in the amount of the Amendment Fee and to apply the proceeds of such Advance to the payment of the Amendment Fee, which, once paid, shall be non-refundable, in whole or in part.

5. **CONDITIONS PRECEDENT.** This Agreement shall not become effective unless and until Lender, each Borrower, and each other Credit Party has executed and delivered this Agreement.

6. **WARRANTIES AND REPRESENTATIONS.** To induce Lender to enter into this Agreement, each Credit Party represents and warrants as follows:

   A. Authority. Such Credit Party has the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder and under the Loan Documents, as amended by this Agreement, to which it is a party. The execution, delivery, and performance by such Credit Party of this Agreement have been duly approved by all necessary action, do not require any governmental approval or consent (which has not been obtained), and do not contravene any law or any contractual restriction binding on such Credit Party.

**B.** Enforceability. This Agreement has been duly executed and delivered by such Credit Party. This Agreement and each Loan Document (as amended by this Agreement) to which such Credit Party is a party constitute legal, valid, and binding obligations of such Credit Party, enforceable against such Credit Party in accordance with their terms, except as enforcement may be limited by equitable principles or by bankruptcy, insolvency, reorganization, moratorium, or similar laws relating to or limiting creditors' rights generally.

**C.** Representations and Warranties. The representations and warranties set forth in the Loan Documents are true and correct in all material respects on and as of the date hereof as though made on and as of the date hereof (other than representations or warranties which, by their terms, are specifically made as of a date other than the date hereof, in which case such representations and warranties shall be true and correct in all material respects).

**D.** No Event of Default. As of the date hereof, and after giving effect to the terms of this Agreement, no Event of Default exists.

**7. EFFECT OF AGREEMENT.**

**A.** Upon and after the effectiveness of this Agreement, each reference in the Loan Agreement, the Demand Note, and the Security Agreement, and each reference in the other Loan Documents to Loan Agreement, the Demand Note, or the Security Agreement, shall mean and be a reference to the Loan Agreement, Demand Note, and Security Agreement as amended by this Agreement, as applicable.

**B.** Except as specifically set forth in this Agreement, the Loan Agreement, the Demand Note, and the Security Agreement and all other Loan Documents are and shall continue to be in full force and effect and shall constitute the legal, valid, binding, and enforceable obligations of the Credit Parties which are party thereto, without defense, offset, claim, or contribution.

**8. RATIFICATION AND REAFFIRMATION.** Each of the Credit Parties (i) consents to the execution and delivery of this Agreement; (ii) confirms, ratifies, and reaffirms the terms and provisions of each Loan Document to which it is a party, as amended by this Agreement, effective as of the date hereof; (iii) confirms, ratifies, and reaffirms all of its respective obligations and covenants under each of the Loan Documents to which it is a party, as amended by this Agreement; and (iv) agrees that none of its obligations and covenants under such Loan Documents is reduced or limited by the execution and delivery of this Agreement, except to the extent expressly provided in this Agreement.

**9. NO NOVATION OR MUTUAL DEPARTURE.** Each Credit Party expressly acknowledges and agrees that (i) there has not been, and this Agreement does not constitute or establish, a novation with respect to the Loan Agreement, the Demand Note, the Security Agreement or any other Loan Documents, or a mutual departure from the strict terms, provisions, and conditions thereof, or the Obligations, other than as expressly set forth herein and (ii) nothing in this Agreement shall affect or limit Lender’s right to demand payment of liabilities owing from any Credit Party to Lender under, or to demand strict performance of the terms, provisions, and conditions of, the Loan Agreement, the Demand Note, the Security Agreement and the other Loan Documents, to exercise any and all rights, powers, and remedies under the Loan Agreement, the Demand Note, the Security Agreement or the other Loan Documents or at law or in equity, or to do any and all of the foregoing, immediately at any time after the occurrence of an Event of Default.

**10. RELEASE OF CLAIMS.** In consideration of Lender’s entering into this Agreement, each Credit Party, for itself and on behalf of its successors, assigns, limited partners, general partners, investors, subsidiaries, shareholders, trustees, officers, directors, employees, agents, and attorneys, and any Person acting for or on behalf of, or claiming through, such Credit Party or any of the aforementioned Persons, fully and unconditionally releases, remises, and forever discharges Lender and its Affiliates, and each of their respective successors in title, past, present and future directors, officers, employees, subsidiaries, branches, affiliates, attorneys, agents, representatives, successors and assigns and all Persons, firms, corporations and organizations acting on any of their behalves (collectively, the "Released Parties"), of and from any and all claims, allegations, causes of action, suits, liens, lawsuits, adverse consequences, damages, losses, amounts paid in settlement, debts, deficiencies, diminution in value, disbursements, obligations, costs or demands and liabilities, of whatever kind or nature (whether in law, in equity, or otherwise), from time immemorial to the date on which this Agreement is executed, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect or derivative, asserted or unasserted, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, anticipated or unanticipated, which such Credit Party has, had, claims to have had or hereafter claims to have against the Released Parties (other than those claims directly resulting from the gross negligence or willful misconduct of such Released Party as determined in a final, non-appealable judgment by a court of competent jurisdiction) by reason of any act or omission on the part of the Released Parties, or any of them, occurring before the date hereof, including without limitation on account of or in any way affecting, concerning or arising out of or founded upon this Agreement up to and including the date hereof, including without limitation all such loss or damage of any kind heretofore sustained or that may arise as a consequence of the dealings among the parties up to and including the date on which this Agreement is executed, in each case, to the extent relating to the Advances, the

Obligations, or any of the other Loan Documents, including the administration and enforcement thereof (collectively, all of the foregoing are the "Claims"). Each Credit Party represents and warrants that it has no knowledge of any Claim by it against the Released Parties or of any facts or acts or omissions of the Released Parties which on the date hereof would be the basis of any Claim which is not released hereby. Each Credit Party represents and warrants that the foregoing constitutes a full and complete release of all Claims.

11. **APPLICABLE LAW; WAIVER OF JURY TRIAL. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE DEEMED CONTRACTS MADE UNDER THE LAWS OF THE JURISDICTION AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE JURISDICTION (EXCLUDING ITS CONFLICT OF LAWS PROVISIONS IF SUCH PROVISIONS WOULD REQUIRE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION) EXCEPT INSOFAR AS (A) THE LAWS OF ANOTHER JURISDICTION MAY, BY REASON OF MANDATORY PROVISIONS OF LAW, GOVERN THE PERFECTION, PRIORITY, OR ENFORCEMENT OF SECURITY INTERESTS IN THE COLLATERAL OR (B) THE TERMS OF SUCH LOAN DOCUMENT EXPRESSLY STATE THAT THE LAW OF A DIFFERENT JURISDICTION SHALL GOVERN. ALL ACTIONS, SUITS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY HEREUNDER MAY, AT THE OPTION OF LENDER, BE LITIGATED IN COURTS LOCATED WITHIN THE JURISDICTION, AND EACH CREDIT PARTY HEREBY EXPRESSLY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE JURISDICTION AND AGREES THAT ANY SERVICE OF PROCESS IN SUCH ACTION OR PROCEEDINGS MAY BE MADE BY PERSONAL SERVICE UPON SUCH CREDIT PARTY WHEREVER SUCH CREDIT PARTY MAY BE THEN LOCATED, OR BY CERTIFIED OR REGISTERED MAIL DIRECTED TO SUCH CREDIT PARTY AT SUCH CREDIT PARTY'S LAST KNOWN ADDRESS; PROVIDED, HOWEVER, THAT THE FOREGOING SHALL NOT PREVENT LENDER FROM BRINGING ANY ACTION, ENFORCING ANY LIEN OR JUDGMENT OR EXERCISING ANY RIGHTS OR REMEDIES AGAINST ANY CREDIT PARTY OR ANY COLLATERAL OR OTHER PROPERTY OF ANY CREDIT PARTY, WITHIN ANY OTHER COUNTY, STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION. EACH CREDIT PARTY WAIVES ANY OBJECTION TO VENUE AND ANY OBJECTION BASED ON A MORE CONVENIENT FORUM IN ANY ACTION INSTITUTED UNDER THIS AGREEMENT. TO THE MAXIMUM EXTENT OF THE LAW, EACH PARTY TO THIS AGREEMENT HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM CONCERNING THIS AGREEMENT AND EACH OTHER LOAN DOCUMENT.**

12. **SUCCESSORS AND ASSIGNS; AGENTS.** This Agreement and each other Loan Document to which any Credit Party is a party shall be binding upon such Credit Party and such Credit Party's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Lender and its successors and assigns. With or without notice to any Credit Party, Lender may sell, assign, or otherwise transfer or grant liens in all or any part of Lender's rights or obligations hereunder, whereupon such purchaser or purchasers shall become vested with all of the powers and rights given to Lender hereunder, to the extent sold, assigned, or otherwise transferred, and Lender shall thereafter be forever released and fully discharged from any liability or responsibility hereunder with respect to the rights and obligations so assigned. Nothing in this Agreement or any other Loan Document shall prohibit Lender from pledging or assigning this Agreement and Lender's rights hereunder or under any of the other Loan Documents, including any rights in or to any Collateral therefor, to any other Person. No Credit Party may assign any of its rights or obligations under this Agreement or the other Loan Documents.

13. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and signed by each Credit Party and Lender. This Agreement and the other Loan Documents are the complete and final expression of the agreement between Lender and the Credit Parties hereto regarding the subject matter hereof and thereof. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

14. **FURTHER ASSURANCES.** Each Credit Party agrees to sign, deliver, and file any additional documents, agreements, instruments, or certifications that Lender may consider necessary or desirable to perfect, continue, and preserve the Obligations and Lender's rights with respect to the Collateral and to effect the transactions contemplated herein and in the other Loan Documents.

15. **TIME; NO PRESUMPTION.** Time is of the essence. No provision of this Agreement or any of the other Loan Documents shall be construed against or interpreted to the disadvantage of any party hereto by any court or tribunal or arbitrator by reason of such party's having or being deemed to have structured, drafted or dictated such provision.

16. **COUNTERPARTS; ELECTRONIC SIGNATURES.** This Agreement and any amendments, waivers, or consents relating hereto may be executed in any number of counterparts and by different parties hereto or thereto in separate counterparts, each of which when so executed and delivered shall be deemed an original and all of which, when taken together, shall constitute but one and the same instrument. Any signature delivered by a party hereto or to any amendment, waiver, or consent relating hereto by facsimile transmission or by electronic

email in Adobe Corporation's Portable Document Format (or PDF) shall be deemed to be an original signature hereto.

17. **SECTION HEADINGS.** Section headings are included for convenience only and not to be used to interpret or define the terms of this Agreement.

18. **ADDITIONAL WAIVERS.** To the extent legally permitted, each Credit Party additionally waives:

    A. **Insurance Benefits.** The benefit of appraisals as provided under Article 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

    B. The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure;

    C. The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

    D. All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

19. **EFFECT OF SIGNATURES.** By signing, each Credit Party agrees to the terms set forth in this Agreement and certifies that such Credit Party has received a copy of this Agreement and that it has completely read and understands this Agreement.

**IN WITNESS WHEREOF**, Lender and each Credit Party have executed and delivered this Agreement as of the date first above written:

**LENDER:**
**AGRIFUND, LLC**

**By:** ________________________________

**Name:** ______________________________

**Title:** _______________________________

**Address for notices:**

420 Throckmorton Street, Suite 1100
Fort Worth, TX 76102

Borrower:

__________________________
Zachary Charles Anderson

Address for notices:
Zachary Charles Anderson
15221 82nd ST.
Becker, MN 55308

email in Adobe Corporation's Portable Document Format (or PDF) shall be deemed to be an original signature hereto.

17 **SECTION HEADINGS**. Section headings are included for convenience only and not to be used to interpret or define the terms of this Agreement.

18 **ADDITIONAL WAIVERS**. To the extent legally permitted, each Credit Party additionally waives:

A **Insurance Benefits**. The benefit of appraisals as provided under Article 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale.

B The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure.

C The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure, and

D All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

19 **EFFECT OF SIGNATURES**. By signing, each Credit Party agrees to the terms set forth in this Agreement and certifies that such Credit Party has received a copy of this Agreement and that it has completely read and understands this Agreement.

**IN WITNESS WHEREOF**, Lender and each Credit Party have executed and delivered this Agreement as of the date first above written.

**LENDER**:
**AGRIFUND, LLC**

By: Tom Pavek
Name: Tom Pavek
Title: Loan Officer

**Address for notices**:
420 Throckmorton Street, Suite 1100
Fort Worth, TX 76102

Borrower:
Zachary Anderson
Zachary Charles Anderson

Address for notices:
Zachary Charles Anderson
15221 82nd ST
Becker, MN 55308

**EXHIBIT B**

**(2023 Note)**

EXHIBIT
B

# DEMAND PROMISSORY NOTE

**(Agricultural - Draw)**

**DATE AND BORROWERS.** This Demand Promissory Note is dated **2/20/2023** and is made by **Zachary Charles Anderson** (each and all of such Persons, singularly and jointly and severally, **"Borrower"**). Each Person signing this Demand Note as a "Borrower" shall be a Borrower hereunder and shall be liable with respect to the Obligations on a joint and several basis with each other Borrower and each other Credit Party. Use of the singular "Borrower" shall mean and refer to each Borrower, singularly or collectively, as the context may require.

---

1. **DEFINITIONS.** Capitalized terms used, but not defined herein, shall have the meanings given such terms under the Loan Agreement (as defined below). In addition to any other terms defined herein, the following terms, as used herein, shall have the following meanings:

   A. **Demand Note.** Demand Note means this Demand Promissory Note, as the same may be amended, restated, supplemented, or otherwise modified or replaced or substituted from time to time.

   B. **Holder.** Holder means Lender or any other Person or Persons having an interest in this Demand Note or any of the indebtedness evidenced hereby.

   C. **Interest Rate.** Interest Rate means **12.95%** per annum.

   D. **Lender.** Lender means Agrifund, LLC, a Delaware limited liability company.

   E. **Maturity Date.** Maturity Date means **3/15/2024**.

   F. **Loan Agreement.** Loan Agreement means that certain Commercial Loan Agreement dated as of **2/20/2023** by and between Lender and Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   G. **Stated Principal Amount.** Stated Principal Amount means **$1,749,488.00**.

2. **PROMISE TO PAY.** For value received, Borrower promises to pay to the order of Holder amounts advanced from time to time under the terms of this Demand Note and the other Loan Documents up to the Stated Principal Amount or such other amount as may be owing by Borrower to Holder under the Loan Documents (the **"Principal"**), plus interest from the date ofdisbursement, on the unpaid outstanding Principal balance until this Demand Note is paid in full.

3. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Demand Note at the Interest Rate.

   A. **Interest After Default.** At any time that any Event of Default exists the Interest Rate shall automatically and without notice to Borrower be increased by 6.00% per annum.

   B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Demand Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to Borrower or such other Person who might be lawfully entitled thereto.

   C. **Accrual.** Interest on this Demand Note shall be calculated on the basis of a year of 365 or 366 days, as applicable, for the actual number of days elapsed.

4. **PAYMENT. BORROWER ACKNOWLEDGES AND AGREES THAT THE OBLIGATIONS EVIDENCED BY THIS DEMAND NOTE ARE DUE AND PAYABLE ON DEMAND AND THAT HOLDER MAY MAKE DEMAND FOR PAYMENT OF SUCH OBLIGATIONS AT ANY TIME, WITH OR WITHOUT THE OCCURRENCE OF ANY OTHER FACT, CIRCUMSTANCE, OR CONTINGENCY AND FOR ANY REASON. BORROWER AGREES TO PAY ALL OBLIGATIONS ON THE EARLIER TO OCCUR OF (A) THE DATE ON WHICH HOLDER DEMANDS PAYMENT AND (B) THE MATURITY DATE.** If any payment is due on a date which is not a Business Day, then such payment shall be due on the immediately following Business Day

5. **PREPAYMENT.** Borrower may prepay this Loan in full or in part at any time, without premium or penalty.

6. **SECURITY.** The Obligations under this Demand Note and all other Obligations are secured by the Security Documents.

7. **COLLECTION EXPENSES.** If this Demand Note is placed in the hands of an attorney for collection following the occurrence of an Event of Default, Borrower agrees to pay to Lender upon demand all costs and expenses, including, without limitation, all reasonable attorneys' fees and court costs incurred by Lender in connection with the enforcement or collection of this Demand Note (whether or not any action has been commenced by Lender to enforce or collect this Note) or in successfully defending any counterclaim or other legal proceeding brought by Borrower contesting Lender's right to collect the outstanding Principal and all other sums due hereunder. All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein or any default rate of interest provided herein, from the date of payment by Lender until repaid in full.

8. **WAIVERS AND CONSENT BY BORROWER.** To the maximum extent permitted by law, Borrower waives demand, presentment for payment, protest and notice of intent to accelerate, of acceleration, of non-payment, of dishonor and any and all other defenses to payment (other than the defense of Payment in Full) of this Demand Note. Lender, without notice to or further consent of Borrower or any other Credit Party and without in any respect compromising, impairing, releasing, lessening or affecting the obligations of Borrower hereunder or under any of the Loan Documents, may: (a) release, surrender, waive, add, substitute, settle, exchange, compromise, modify, extend or grant indulgences with respect to (i) this Demand Note, (ii) any of the other Loan Documents, (iii) all or any part of any collateral or security for this Demand Note and/or (iv) any other Credit Party; (b) complete any blank space in this Demand Note according to the terms upon which the loan evidenced hereby is made; and (c) grant any extension or other postponements of the time of payment hereof. In addition, Borrower waives the benefit of any applicable valuation and appraisement laws. Borrower specifically waives (a) all defenses based upon suretyship or impairment of collateral, and (b) any defenses which Borrower may assert on the underlying debt, including but not limited to failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of legal capacity, statute of limitations, lender liability, accord and satisfaction, and usury.

9. **NO WAIVER.** No failure or delay on the part of any Holder to exercise any right under this Demand Note or any other Loan Document or under applicable law shall operate as a waiver hereof or thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

10. **SUCCESSORS AND ASSIGNS.** This Demand Note shall be binding upon Borrower and Borrower's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Holder and its successors and assigns. Borrower may not assign any of its rights or obligations under this Demand Note or the other Loan Documents. Lender may assign all or any portion of its rights under this Demand Note or the other Loan Documents. Lender may disclose to any actual or potential assignee any information Borrower has delivered to Lender in connection with this Demand Note or the other Loan Documents.

11. **EFFECT OF SIGNATURES.** By signing, Borrower agrees to the terms set forth in this Demand Note and certifies that Borrower has received a copy of this Demand Note and that it has completely read and understands this Demand Note.

**IN WITNESS WHEREOF**, each Borrower has executed and delivered this Demand Note as of the date first above written:

**Address for Notices:**
Zachary Charles Anderson
15221 82nd ST.
Becker, MN 55308

Borrower:

[signature]

Zachary Charles Anderson

# EXHIBIT C

(2022 Security Agreement)

EXHIBIT
C

# SECURITY AGREEMENT

**DATE AND PARTIES.** This Security Agreement is dated as of 3/3/2022 and is by and between or among AGRIFUND, LLC, a Delaware limited liability company ("Lender"), and
Zachary Charles Anderson

each of the Persons party hereto as a "Debtor" (each and all of such Persons, singularly and jointly and severally, "**Debtor**").

1. **DEFINITIONS AND RELATED TERMS.** Capitalized terms used, but not defined herein, shall have the meanings given such terms under the Loan Agreement (as defined below). In addition to any other terms defined herein, the following terms, as used herein, shall have the following meanings:
   - A. **Agreement.** Agreement means this Security Agreement, as the same may be amended, restated, supplemented, or otherwise modified from time to time.
   - B. **Collateral.** Collateral means all of the property described on Exhibit A, attached hereto and made a part hereof.
   - C. **Cross-Collateralization Agreement.** Cross-Collateralization Agreement means any now existing or hereafter arising cross-collateralization agreement or similar instrument executed and delivered by Debtor in favor of Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.
   - D. **Loan Agreement.** Loan Agreement means that certain Commercial Loan Agreement dated as of the date hereof by and between Lender and Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.
   - E. **Secured Obligations.** Secured Obligations means all Obligations.
   - F. **Payment in Full.** Payment in Full means the full and final payment in cash and performance of any and all Secured Obligations.
2. **RULES OF CONSTRUCTION.**
   - A. **Multiple Debtors.** Each Person signing this Agreement as a "Debtor" shall be a Debtor hereunder and shall be liable with respect to the Secured Obligations on a joint and several basis with each other Debtor and each other Credit Party. Use of the singular "Debtor" shall mean and refer to each Debtor, singularly or collectively, as the context may require.
3. **GRANT OF SECURITY INTEREST.** To secure the full and final payment and performance of all Secured Obligations, Debtor hereby grants Lender a security interest in the Collateral. The security interest granted in this Agreement to Lender shall continue until the earlier to occur of termination of this Agreement in a writing signed by Lender and Payment in Full.
4. **WARRANTIES AND REPRESENTATIONS.** Debtor makes to Lender the following warranties and representations which will continue as long as this Agreement is in effect:
   - A. **Power.** Each Debtor is organized, validly existing, qualified, and in good standing in each jurisdiction in which it operates. Each Debtor has the power and authority to execute and deliver this Agreement and to perform its obligations hereunder, including, without limitation, to grant Liens on its property as provided in this Agreement. Each Debtor has the power and authority to carry on its business and activities as they are now being conducted.
   - B. **Authority.** The execution and delivery of this Agreement by each Debtor, as applicable, and each Debtor's performance of its obligations under this Agreement have been duly authorized by all requisite action, have received all necessary governmental approval, will not violate any provision of law or order of any court or government or authority, and will not violate any agreement to which such Debtor is a party or to which such Debtor or any of its property is subject.
5. **FINANCING STATEMENTS; FIXTURE FILINGS; ADDITIONAL FILINGS; POWER OF ATTORNEY.** Debtor authorizes Lender to file any financing statements, fixture filings, notices under the Food Security Act, and other filings or public records or notices relating to the perfection or better perfection or protection of Liens or other interests and amendments thereto relating to Debtor or the Collateral which Lender deems appropriate, in each case, in form and substance required by Lender, and to (a) describe the Collateral in the manner determined by Lender and (b) include therein all other information which is required or which Lender believes is required by the laws of any applicable jurisdiction (including Article 9 of the UCC as enacted in any jurisdiction) with respect to the preparation or filing thereof. Debtor appoints Lender as its attorney-in-fact to perform all acts which Lender deems appropriate to perfect and to continue perfection of the Lien granted to Lender under this Agreement or any other Loan Document to which Debtor is a party, including, without limitation, (i) the filing of financing statements, fixture filings, notices under the Food Security Act, and other filings or public records or notices relating to the perfection or better perfection or protection of Liens and other interests and amendments thereto, (ii) the execution in Debtor's name of any agreements providing for control over any applicable Collateral, and (iii) the indorsement, presentation, and collection on behalf of Debtor and in Debtor's name of any checks, instruments, notes, or other documents, instruments, or agreements necessary or desirable to collect any amounts which Debtor may be owed, such power of attorney being coupled with an interest and is therefore irrevocable.
6. **FOOD SECURITY ACT.** From time to time upon Lender's request, Debtor hereby agrees to provide Lender in writing the names, addresses, and other requested information regarding all buyers, commission merchants, or selling agents to or through which Debtor may sell or otherwise dispose of its farm products and related assets. Debtor hereby authorizes Lender to notify all buyers, commission merchants, selling agents and others regarding Lender's Lien under this Agreement and the other Loan Documents; provided, however, that Lender shall have no obligation to provide or give such notice and

the failure to provide or give such notice shall not in any way constitute a waiver of any provision of any Loan Document.

7. **INTELLECTUAL PROPERTY.** Debtor grants Lender a non-exclusive license and right to use, without royalty or other charge, Debtor's intellectual and other property (including, without limitation, any licensed intellectual property, unless prohibited by the enforceable terms of such license) for purposes of advertising any Collateral for sale, collecting any accounts, disposing of or liquidating any Collateral, settling claims, or otherwise exercising any of its rights and remedies under the Loan Documents (including, without limitation, labels, patents, copyrights, trade secrets, trade names, trademarks, service marks, product line names, advertising materials, and any other property of a similar nature). Debtor's rights under all licenses and all franchise agreements shall inure to Lender's benefit. Debtor shall be liable for any and all expense incurred in connection with Lender's exercising its rights under this Agreement and the other Loan Documents to which Debtor is a party.

8. **ENTRY.** Debtor (for itself and on behalf of its affiliates) irrevocably consents to any act by Lender or its agents in entering upon any premises for the purposes of either (a) inspecting any Collateral or (b) taking possession of any Collateral. Debtor waives, as to Lender and its agents, any now existing or hereafter arising claim based upon trespass or any similar cause of action for entering upon any premises where Collateral may be located.

9. **OTHER RIGHTS.** Without limiting Debtor's obligations under the this Agreement and the other Loan Documents, Debtor authorizes Lender from time to time (a) to (i) take from any party and hold additional collateral or guaranty for the payment of the Secured Obligations or any part thereof, (ii) exchange, enforce, or release such collateral or guaranty or any part thereof, and (iii) release or substitute any indorser or guarantor or any party who has granted Lender any security interest in any property as security for the payment of the Secured Obligations or any part thereof or any party in any way obligated to pay the Secured Obligations or any part thereof, and (b) during the existence of any Event of Default, to direct the manner of the disposition of the Collateral and the enforcement of any indorsements, guaranties, letters of credit, or other security or Supporting Obligations relating to the Secured Obligations or any part thereof as Lender in its sole discretion may determine.

10. **ACCOUNTS; OTHER COLLATERAL.** Before or after an Event of Default, Lender may contact any Account Debtor or other Person obligated on any Collateral to (i) verify any instructions which may be given with respect to the payment of such Account, (ii) notify such Account Debtor or Person of the existence of Lender's Liens under the Loan Documents, and (iii) notify such Account Debtor or Person to make payment on Debtor's Accounts which constitute Collateral directly to Lender or in accordance with Lender's directions.

11. **WAIVER OF MARSHALING.** Debtor hereby waives any right it may have to require marshaling of its assets.

12. **CONTROL; FURTHER ASSURANCES.** Debtor will, at its expense, cooperate with Lender from time to time in (a) obtaining control of, or control agreements with respect to, Collateral for which control or a control agreement is required or is an available method for perfection of Lender's security interest under the UCC and (b) perfecting or better perfecting or protecting Lender's security interests in the Collateral by any one or more methods of perfection and protection requested by Lender. If any of the Collateral comprises chattel paper or instruments, Debtor will mark such chattel paper and instruments on the face thereof with a statement that such chattel paper and instrument is subject to Lender's security interest and, if requested by Lender, deliver such chattel paper and instruments to Lender's possession.

13. **AUTHORITY TO PERFORM.** Debtor authorizes Lender to do anything it deems necessary to protect the Collateral, including, without limitation:

    **A.** Pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral.

    **B.** Pay any rents or other charges under any lease affecting the Collateral.

    **C.** Order and pay for the repair, maintenance, and preservation of the Collateral.

    **D.** File any financing statements on Debtor's or Lender's behalf and pay for filing and recording fees pertaining to the Collateral.

    **E.** Place a note on any chattel paper indicating Lender's interest in the Collateral.

    **F.** Take any action Lender believes or deems necessary to realize on the Collateral, including, without limitation, performing any part of a contract or indorsing the same in Debtor's name.

    **G.** Handle in Debtor's or Lender's name, any suits or other proceedings involving the Collateral (including, without limitation, entering into any settlement or related agreements).

    **H.** Prepare, file, and sign Debtor's name to any necessary reports or accountings.

    **I.** Making entries in Debtor's books and records showing the existence of this Agreement and the other Loan Documents and the interests created herein or therein.

14. **REMEDIES.** During the existence of any Event of Default, Lender may, in its sole and absolute discretion, exercise any and all remedies it may have, whether arising under statute or rule, by contract, or in equity, whether against Debtor or any other Credit Party or the Collateral, all of which shall be cumulative and may be exercised singly or cumulatively, at one time or from time to time, including, without limitation:

    **A.** Lender may exercise any or all of the rights, powers, privileges and remedies granted to a secured party under the UCC or otherwise provided by law;

    **B.** Lender may contact all Persons obligated to a Debtor on or with respect to any Collateral and to instruct such Persons to deliver all Collateral directly to Lender;

    **C.** Lender may sell, lease, license or otherwise dispose of any or all Collateral;

    **D.** Lender may notify the United States Postal Service to change the address for delivery of mail of Debtor to any address

designated by Lender;

E. Without notice to or consent by any Debtor or other Credit Party, and without the obligation to pay rent or other compensation, Lender may (but shall not be obligated to) take exclusive possession of all locations where any Debtor conducts it business or has any rights of possession and use such locations and any of all of Debtor's equipment (or any equipment in which Debtor has any right to use) to continue growing any crops which constitute Collateral to fruition, harvest any crops which constitute Collateral, store, process, manufacture, sell, use, and liquidate or otherwise dispose of Collateral and, in so doing, use and consume at Debtor's sole cost and expense, any and all fertilizers, fuel, chemicals, seed, bags, and other farm products to undertake the same;

F. With regard to any deposit account which contains any Collateral or proceeds of any Collateral, Lender may instruct the bank maintaining such deposit account to pay the balance of such Deposit Account to Lender or take such other action as Lender shall instruct;

G. With regard to any securities account or commodity account which contains any Collateral or proceeds of any Collateral, Lender may instruct the securities intermediary maintaining such securities account or the commodity intermediary maintaining such commodity account, as applicable, to pay the balance of such securities account or such commodity account, as applicable, to Lender or take such other action as Lender shall instruct;

H. Without regard to the occurrence of waste or the adequacy of security, apply for the appointment of a receiver for any Debtor or for the assets of any Debtor and each Debtor waives any objection to such appointment or to the right to have a bond or security posted by Lender; and

I. Lender may apply the proceeds of Collateral to the Secured Obligations in whatever order Lender may determine.

15. **CERTAIN RESTRICTIONS.** While an Event of Default exists:

A. Each Debtor will deliver to Lender from time to time, as requested by Lender, current lists of all Collateral and the location of such Collateral;

B. No Debtor will dispose of any Collateral except on terms approved by Lender; and

C. At Lender's request, each Debtor will assemble and deliver all Collateral and books and records pertaining thereto to Lender at a reasonably convenient place designated by Lender or in accordance with Lender's instructions.

16. **KEEPER OF PROPERTY.** Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Agreement or any other Loan Document, by executory process, sequestration, attachment, or writ of fieri facias, or otherwise, Debtor hereby agrees that the court issuing such an order shall, if requested by the Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as keeper of the property as (provided in La. R. S. 9:5136 et. seq.), such a keeper shall be entitled to a reasonable compensation. Debtor agrees to pay the reasonable fees of such keeper, which compensation to the keeper shall also be secured by this agreement in the form of an additional advance as provided in this Agreement and the other Loan Documents.

17. **INDEMNIFICATION; REIMBURSEMENT OF EXPENSES.** Debtor agrees to defend, protect, indemnify, and hold harmless Lender and its affiliates and all of their respective officers, directors, employees, attorneys, consultants, and agents from and against any and all losses, damages, liabilities, obligations, penalties, fines, taxes, fees, costs, and expenses (including, without limitation, attorneys' fees, costs and expenses; fees, costs and expenses for investigations, experts, and advisors; all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to the Secured Obligations or any of the Loan Documents or the enforcement or protection of Lender's rights under the Loan Documents) incurred by or on behalf of such indemnitees, whether before or after the date of this Agreement, as a result of or arising from or in any way relating to the Loan Documents, the making of any Advance, the use of the proceeds of any Advance, or the transactions contemplated herein or in any other Loan Documents or the exercise of Lender's remedies hereunder or at law or in equity. Debtor's obligations under this section shall be part of the Secured Obligations, shall be secured by the Collateral, and shall be due and payable by Debtor ON DEMAND. Debtor' obligations under this section shall survive Payment in Full.

18. **APPLICABLE LAW; WAIVER OF JURY TRIAL. THE APPLICABLE LAW AND WAIVER OF JURY TRIAL PROVISIONS IN THE LOAN AGREEMENT ARE HEREBY INCORPORATED BY REFERENCE IN THIS AGREEMENT.**

19. **SUCCESSORS AND ASSIGNS; AGENTS.** This Agreement and each other Loan Document to which Debtor is a party shall be binding upon Debtor and Debtor's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Debtor may not assign any of its rights or obligations under this Agreement or the other Loan Documents. Lender may from time to time appoint one or more agents and subagents for purposes of perfecting on the Collateral and otherwise taking or accepting collateral assignments of rights otherwise stated to be granted to Lender hereunder or enforcing its rights hereunder. Each of such agents and subagents shall be entitled to the same rights of indemnification and reimbursement of fees, costs, and expenses which are otherwise available to Lender under this Agreement and the other Loan Documents, all without further consent or acknowledgment of, or notice to, Debtor or any other Credit Party.

20. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and signed by Debtor and Lender. This Agreement and the other Loan Documents are the complete and final expression of the agreement between Lender and Debtor regarding the subject matter hereof and thereof. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

21. **NOTICE.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and shall be effective upon receipt by the noticed party. Acceptable methods for giving notices hereunder

shall include first-class U.S. mail, hand-delivery, and nationally recognized commercial courier service. Regardless of the manner in which notice is provided, notices may be sent to the addresses for Lender and Debtor as set forth below the applicable party's signature to this Agreement or to such other address as any party may give to any of the others for such purpose in accordance with this Agreement.

22. **FURTHER ASSURANCES.** Debtor agrees to sign, deliver, and file any additional documents, agreements, instruments, or certifications that Lender may consider necessary or desirable to perfect, continue, and preserve the Secured Obligations and Lender's rights with respect to the Collateral and to effect the transactions contemplated herein and in the other Loan Documents.

23. **CONFIDENTIALITY.** Lender will endeavor to maintain the confidentiality of the information Lender or Lender's agents obtain with respect to Debtor, except that Lender may disclose such information (i) in any litigation, arbitration, or other proceeding involving any Credit Party, the Secured Obligations, or the Loan Documents; (ii) to any of Lender's affiliates; (iii) to any government or governmental or regulatory agency and any self-regulating authority; (iv) to Lender's accountants, auditors, counsel, and advisors; (v) to any of Lender's actual or prospective assignees or participants; (v) as may be required by court order or law, rule, or regulation; (vi) to the extent permitted or contemplated under any Loan Document; and (vii) to any other Person whom Lender reasonably believes to be a creditor of Debtor or any other Credit Party.

24. **NO WAIVER.** No failure or delay on the part of Lender to exercise any right under this Agreement or any other Loan Document or under applicable law shall operate as a waiver hereof or thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

25. **SURVIVAL OF CERTAIN TERMS.** All representations and warranties made in this Agreement and the other Loan Documents shall survive the making of any Advance and the delivery of any other Loan Document and shall continue in full force and effect until Payment in Full.

26. **COUNTERPARTS; ELECTRONIC SIGNATURES.** This Agreement and any amendments, waivers, or consents relating hereto may be executed in any number of counterparts and by different parties hereto or thereto in separate counterparts, each of which when so executed and delivered shall be deemed an original and all of which, when taken together, shall constitute but one and the same instrument. Any signature delivered by a party hereto or to any amendment, waiver, or consent relating hereto by facsimile transmission or by electronic email in Adobe Corporation's Portable Document Format (or PDF) shall be deemed to be an original signature hereto.

27. **ADDITIONAL WAIVERS.** To the extent legally permitted, Debtor additionally waives:

    **A.** The benefit of appraisal as provided under Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

    **B.** The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure;

    **C.** The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

    **D.** All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

28. **EFFECT OF SIGNATURES.** By signing, Debtor agrees to the terms set forth in this Agreement and certifies that Debtor has received a copy of this Agreement and the other Loan Documents and that it has completely read and understands this Agreement.

**IN WITNESS WHEREOF**, Lender and each Debtor have executed and delivered this Agreement as of the date first above written:

**LENDER:**
**AGRIFUND, LLC**

**By:** [signature]

**Name:** Don Leapaldt

**Title:** Area Manager

**Address for notices:**

420 Throckmorton Street, Suite 1100
Fort Worth, TX 76102

Debtor:

Address for Notices:
Zachary Charles Anderson
15221 82nd ST.
Becker, MN 55308

[signature]
Zachary Charles Anderson

## EXHIBIT A
## COLLATERAL

FARM PRODUCTS (CROPS): Any and all of Debtor's present and future rights, title, and interest in and to now existing or hereafter arising farm products consisting of harvested or unharvested crops grown, to be grown, or growing on the "Specified Real Property."

"Specified Real Property" includes, but is not limited to, the real property identified as follows:

Minnesota: Benton County FSN# 982, 3647, 6310, 6281, 4533, 407, 6335, 6304, 6280, 6311, 6332, 351, 251, 4639, 4840, 6314, 3702, 1185, 421, 6305, 6309, 3899, 459. Douglas County FSN# 118, 3420. Mille Lacs County FSN# 5604. Sherburne County FSN# 4024, 3057, 2845, 304, 232, 4590.

FARM PRODUCTS (RELATED PROPERTY): Any and all of Debtor's present and future rights, title and interest in and to now existing or hereafter arising farm products consisting of chemicals and fertilizers.

FARM PRODUCTS (SPECIFIED OTHER): Any and all of Debtor's present and future rights, title and interest in and to now existing or hereafter arising farm products described as follows:

All Crops

INVENTORY: Any and all of Debtor's present and future rights, title and interest in all inventory of every type and description, whether now existing or hereafter arising or existing.

EQUIPMENT: Any and all of Debtor's present and future rights, title, and interest in and to all equipment of every type and description, whether now existing or hereafter arising or existing and together with all additions thereto and all substitutions or replacements therefor, and all accessories, attachments, and accessions thereto.

TOGETHER, IN ALL CASES, WITH EACH OF THE FOREGOING:

All rights to payment and payments made in respect of any of the foregoing;

All payments in kind, including without limitation PIK certificates and commodities redeemed or acquired by PIK certificates, in each case, in connection with any of the foregoing, in each case, whether now existing or hereafter arising;

All rights under insurance policies of any kind or nature relating to, insuring, or otherwise covering any of the foregoing, including, without limitation, all rights to receive payments under any such insurance, whether such payments are made in respect of losses, refunds of premiums, or otherwise, in each case, whether now existing or hereafter arising;

All of Debtor's rights under, and payments due to or to become due to Debtor under, any and all federal or state laws, rules, regulations, or programs relating in any way to any of the foregoing, including, without limitation, all rights of payment for participation under or by or through the Commodity Credit Corporation, the Agricultural Conservation Program, the Cropland Conversion Program, the National Wool Act of 1954, the Wheat, Feed Grain, and Cotton Programs of the Agricultural Adjustment Act of 1938, in each case, whether now existing or hereafter arising;

All of Debtor's documents, documents of title, warehouse receipts, and bills of lading evidencing or relating to or issued in connection with any of the foregoing, in each case, whether now existing or hereafter arising;

All of Debtor's general intangibles in any way relating or pertaining to any of the foregoing, including, without limitation, Debtor's books, records, files, computer disks, and software relating in any way to the foregoing, and all rights that Debtor may have with regard thereto, in each case, whether now existing or hereafter arising;

All of Debtor's rights to payment in respect of any diversion and storage payments, seed payments, rebates, gin rebates, elevator rebates, and warehouse rebates; and

All of Debtor's accounts, general intangibles, payment intangibles, tangible chattel paper, electronic chattel paper, letter-of-credit rights, instruments, supporting obligations, documents, documents of title, warehouse receipts, bills of lading, inventory, equipment, farm products, and goods, in each case, constituting proceeds or products (manufactured or otherwise) of the foregoing or covering or relating to any of the foregoing, and all products and proceeds of the foregoing.

EXCLUDED PROPERTY: Any of the foregoing to the contrary notwithstanding, the Collateral shall not include any of property described below:

a. Farm products consisting in any respect of marijuana or any inventory consisting of marijuana (or any products manufactured from marijuana).

b. Consumer goods.

c. The following property (if any):

None

# EXHIBIT D

(2023 Security Agreement)

EXHIBIT
D

# SECURITY AGREEMENT

**DATE AND PARTIES** This Security Agreement is dated as of **2/20/2023** and is by and between or among AGRIFUND, LLC, a Delaware limited liability company ("Lender"), and **Zachary Charles Anderson** each of the Persons party hereto as a "Debtor" (each and all of such Persons, singularly and jointly and severally, **"Debtor"**).

1. **DEFINITIONS AND RELATED TERMS.** Capitalized terms used, but not defined herein, shall have the meanings given such terms under the Loan Agreement (as defined below). In addition to any other terms defined herein, the following terms, as used herein, shall have the following meanings:

   A. **Agreement.** Agreement means this Security Agreement, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   B. **Collateral.** Collateral means all of the property described on Exhibit A, attached hereto and made a part hereof.

   C. **Cross-Collateralization Agreement.** Cross-Collateralization Agreement means any now existing or hereafter arising cross-collateralization agreement or similar instrument executed and delivered by Debtor in favor of Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   D. **Loan Agreement.** Loan Agreement means that certain Commercial Loan Agreement dated as of the date hereof by and between Lender and Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   E. **Secured Obligations.** Secured Obligations means all Obligations.

   F. **Payment in Full.** Payment in Full means the full and final payment in cash and performance of any and all Secured Obligations.

2. **RULES OF CONSTRUCTION.**

   A. **Multiple Debtors.** Each Person signing this Agreement as a "Debtor" shall be a Debtor hereunder and shall be liable with respect to the Secured Obligations on a joint and several basis with each other Debtor and each other Credit Party. Use of the singular "Debtor" shall mean and refer to each Debtor, singularly or collectively, as the context may require.

3. **GRANT OF SECURITY INTEREST.** To secure the full and final payment and performance of all Secured Obligations, Debtor hereby grants Lender a security interest in the Collateral. The security interest granted in this Agreement to Lender shall continue until the earlier to occur of termination of this Agreement in a writing signed by Lender and Payment in Full.

4. **WARRANTIES AND REPRESENTATIONS.** Debtor makes to Lender the following warranties and representations which will continue as long as this Agreement is in effect:

   A. **Power.** Each Debtor is organized, validly existing, qualified, and in good standing in each jurisdiction in which it operates. Each Debtor has the power and authority to execute and deliver this Agreement and to perform its obligations hereunder, including, without limitation, to grant Liens on its property as provided in this Agreement. Each Debtor has the power and authority to carry on its business and activities as they are now being conducted.

   B. **Authority.** The execution and delivery of this Agreement by each Debtor, as applicable, and each Debtor's performance of its obligations under this Agreement have been duly authorized by all requisite action, have received all necessary governmental approval, will not violate any provision of law or order of any court or government or authority, and will not violate any agreement to which such Debtor is a party or to which such Debtor or any of its property is subject.

5. **FINANCING STATEMENTS; FIXTURE FILINGS; ADDITIONAL FILINGS; POWER OF ATTORNEY.** Debtor authorizes Lender to file any financing statements, fixture filings, notices under the Food Security Act, and other filings or public records or notices relating to the perfection or better perfection or protection of Liens or other interests and amendments thereto relating to Debtor or the Collateral which Lender deems appropriate, in each case, in form and substance required by Lender, and to (a) describe the Collateral in the manner determined by Lender and (b) include therein all other information which is required or which Lender believes is required by the laws of any applicable jurisdiction (including Article 9 of the UCC as enacted in any jurisdiction) with respect to the preparation or filing thereof. Debtor appoints Lender as its attorney in-fact to perform all acts which Lender deems appropriate to perfect and to continue perfection of the Lien granted to Lender under this Agreement or any other Loan Document to which Debtor is a party, including, without limitation, (i) the filing of financing statements, fixture filings, notices under the Food Security Act, and other filings or public records or notices relating to the perfection or better perfection or protection of Liens and other interests and amendments thereto, (ii) the execution in Debtor's name of any agreements providing for control over any applicable Collateral, and (iii) the indorsement, presentation, and collection on behalf of Debtor and in Debtor's name of any checks, instruments, notes, or other documents, instruments, or agreements necessary or desirable to

collect any amounts which Debtor may be owed, such power of attorney being coupled with an interest and is therefore irrevocable.

6. **FOOD SECURITY ACT.** From time to time upon Lender's request, Debtor hereby agrees to provide Lender in writing the names, addresses, and other requested information regarding all buyers, commission merchants, or selling agents to or through which Debtor may sell or otherwise dispose of its farm products and related assets. Debtor hereby authorizes Lender to notify all buyers, commission merchants, selling agents and others regarding Lender's Lien under this Agreement and the other Loan Documents; provided, however, that Lender shall have no obligation to provide or give such notice and the failure to provide or give such notice shall not in any way constitute a waiver of any provision of any Loan Document.

7. **INTELLECTUAL PROPERTY.** Debtor grants Lender a non-exclusive license and right to use, without royalty or other charge, Debtor's intellectual and other property (including, without limitation, any licensed intellectual property, unless prohibited by the enforceable terms of such license) for purposes of advertising any Collateral for sale, collecting any accounts, disposing of or liquidating any Collateral, settling claims, or otherwise exercising any of its rights and remedies under the Loan Documents (including, without limitation, labels, patents, copyrights, trade secrets, trade names, trademarks, service marks, product line names, advertising materials, and any other property of a similar nature). Debtor's rights under all licenses and all franchise agreements shall inure to Lender's benefit. Debtor shall be liable for any and all expense incurred in connection with Lender's exercising its rights under this Agreement and the other Loan Documents to which Debtor is a party.

8. **ENTRY.** Debtor (for itself and on behalf of its affiliates) irrevocably consents to any act by Lender or its agents in entering upon any premises for the purposes of either (a) inspecting any Collateral or (b) taking possession of any Collateral. Debtor waives, as to Lender and its agents, any now existing or hereafter arising claim based upon trespass or any similar cause of action for entering upon any premises where Collateral may be located.

9. **OTHER RIGHTS.** Without limiting Debtor's obligations under the this Agreement and the other Loan Documents, Debtor authorizes Lender from time to time (a) to (i) take from any party and hold additional collateral or guaranty for the payment of the Secured Obligations or any part thereof, (ii) exchange, enforce, or release such collateral or guaranty or any part thereof, and (iii) release or substitute any indorser or guarantor or any party who has granted Lender any security interest in any property as security for the payment of the Secured Obligations or any part thereof or any party in any way obligated to pay the Secured Obligations or any part thereof, and (b) during the existence of any Event of Default, to direct the manner of the disposition of the Collateral and the enforcement of any indorsements, guaranties, letters of credit, or other security or Supporting Obligations relating to the Secured Obligations or any part thereof as Lender in its sole discretion may determine.

10. **ACCOUNTS; OTHER COLLATERAL.** Before or after an Event of Default, Lender may contact any Account Debtor or other Person obligated on any Collateral to (i) verify any instructions which may be given with respect to the payment of such Account, (ii) notify such Account Debtor or Person of the existence of Lender's Liens under the Loan Documents, and (iii) notify such Account Debtor or Person to make payment on Debtor's Accounts which constitute Collateral directly to Lender or in accordance with Lender's directions.

11. **WAIVER OF MARSHALING.** Debtor hereby waives any right it may have to require marshaling of its assets.

12. **CONTROL;** FURTHER ASSURANCES. Debtor will, at its expense, cooperate with Lender from time to time in (a) obtaining control of, or control agreements with respect to, Collateral for which control or a control agreement is required or is an available method for perfection of Lender's security interest under the UCC and (b) perfecting or better perfecting or protecting Lender's security interests in the Collateral by any one or more methods of perfection and protection requested by Lender. If any of the Collateral comprises chattel paper or instruments, Debtor will mark such chattel paper and instruments on the face thereof with a statement that such chattel paper and instrument is subject to Lender's security interest and, if requested by Lender, deliver such chattel paper and instruments to Lender's possession.

13. **AUTHORITY TO PERFORM.** Debtor authorizes Lender to do anything it deems necessary to protect the Collateral, including, without limitation:

    **A.** Pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral.

    **B.** Pay any rents or other charges under any lease affecting the Collateral.

    **C.** Order and pay for the repair, maintenance, and preservation of the Collateral.

    **D.** File any financing statements on Debtor's or Lender's behalf and pay for filing and recording fees pertaining to the Collateral.

    **E.** Place a note on any chattel paper indicating Lender's interest in the Collateral.

    **F.** Take any action Lender believes or deems necessary to realize on the Collateral, including, without limitation, performing any part of a contract or indorsing the same in Debtor's name.

    **G.** Handle in Debtor's or Lender's name, any suits or other proceedings involving the Collateral (including, without limitation, entering into any settlement or related agreements).

**H.** Prepare, file, and sign Debtor's name to any necessary reports or accountings.

**I.** Making entries in Debtor's books and records showing the existence of this Agreement and the other Loan Documents and the interests created herein or therein.

**14. REMEDIES.** During the existence of any Event of Default, Lender may, in its sole and absolute discretion, exercise any and all remedies it may have, whether arising under statute or rule, by contract, or in equity, whether against Debtor or any other Credit Party or the Collateral, all of which shall be cumulative and may be exercised singly or cumulatively, at one time or from time to time, including, without limitation:

**A.** Lender may exercise any or all of the rights, powers, privileges and remedies granted to a secured party under the UCC or otherwise provided by law;

**B.** Lender may contact all Persons obligated to a Debtor on or with respect to any Collateral and to instruct such Persons to deliver all Collateral directly to Lender;

**C.** Lender may sell, lease, license or otherwise dispose of any or all Collateral;

**D.** Lender may notify the United States Postal Service to change the address for delivery of mail of Debtor to any address designated by Lender;

**E.** Without notice to or consent by any Debtor or other Credit Party, and without the obligation to pay rent or other compensation, Lender may (but shall not be obligated to) take exclusive possession of all locations where any Debtor conducts it business or has any rights of possession and use such locations and any of all of Debtor's equipment (or any equipment in which Debtor has any right to use) to continue growing any crops which constitute Collateral to fruition, harvest any crops which constitute Collateral, store, process, manufacture, sell, use, and liquidate or otherwise dispose of Collateral and, in so doing, use and consume at Debtor's sole cost and expense, any and all fertilizers, fuel, chemicals, seed, bags, and other farm products to undertake the same;

**F.** With regard to any deposit account which contains any Collateral or proceeds of any Collateral, Lender may instruct the bank maintaining such deposit account to pay the balance of such Deposit Account to Lender or take such other action as Lender shall instruct;

**G.** With regard to any securities account or commodity account which contains any Collateral or proceeds of any Collateral, Lender may instruct the securities intermediary maintaining such securities account or the commodity intermediary maintaining such commodity account, as applicable, to pay the balance of such securities account or such commodity account, as applicable, to Lender or take such other action as Lender shall instruct;

**H.** Without regard to the occurrence of waste or the adequacy of security, apply for the appointment of a receiver for any Debtor or for the assets of any Debtor and each Debtor waives any objection to such appointment or to the right to have a bond or security posted by Lender; and

**I.** Lender may apply the proceeds of Collateral to the Secured Obligations in whatever order Lender may determine.

**15. CERTAIN RESTRICTIONS.** While an Event of Default exists:

**A.** Each Debtor will deliver to Lender from time to time, as requested by Lender, current lists of all Collateral and the location of such Collateral;

**B.** No Debtor will dispose of any Collateral except on terms approved by Lender; and

**C.** At Lender's request, each Debtor will assemble and deliver all Collateral and books and records pertaining thereto to Lender at a reasonably convenient place designated by Lender or in accordance with Lender's instructions.

**16. KEEPER OF PROPERTY.** Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Agreement or any other Loan Document, by executory process, sequestration, attachment, or writ of fieri facias, or otherwise, Debtor hereby agrees that the court issuing such an order shall, if requested by the Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as keeper of the property as (provided in La. R. S. 9:5136 et. seq.), such a keeper shall be entitled to a reasonable compensation. Debtor agrees to pay the reasonable fees of such keeper, which compensation to the keeper shall also be secured by this agreement in the form of an additional advance as provided in this Agreement and the other Loan Documents.

**17. INDEMNIFICATION; REIMBURSEMENT OF EXPENSES.** Debtor agrees to defend, protect, indemnify, and hold harmless Lender and its affiliates and all of their respective officers, directors, employees, attorneys, consultants, and agents from and against any and all losses, damages, liabilities, obligations, penalties, fines, taxes, fees, costs, and expenses (including, without limitation, attorneys' fees, costs and expenses; fees, costs and expenses for investigations, experts, and advisors; all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to the Secured Obligations or any of the Loan Documents or the enforcement or protection of Lender's rights under the Loan Documents) incurred by or on behalf of such indemnitees, whether before or after the date of this Agreement, as a result of or arising from or in any way relating to the Loan Documents, the making of any Advance, the use

of the proceeds of any Advance, or the transactions contemplated herein or in any other Loan Documents or the exercise of Lender's remedies hereunder or at law or in equity. Debtor's obligations under this section shall be part of the Secured Obligations, shall be secured by the Collateral, and shall be due and payable by Debtor ON DEMAND. Debtor' obligations under this section shall survive Payment in Full.

18. **APPLICABLE LAW; WAIVER OF JURY TRIAL. THE APPLICABLE LAW AND WAIVER OF JURY TRIAL PROVISIONS IN THE LOAN AGREEMENT ARE HEREBY INCORPORATED BY REFERENCE IN THIS AGREEMENT.**

19. **SUCCESSORS AND ASSIGNS; AGENTS.** This Agreement and each other Loan Document to which Debtor is a party shall be binding upon Debtor and Debtor's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Debtor may not assign any of its rights or obligations under this Agreement or the other Loan Documents. Lender may from time to time appoint one or more agents and subagents for purposes of perfecting on the Collateral and otherwise taking or accepting collateral assignments of rights otherwise stated to be granted to Lender hereunder or enforcing its rights hereunder. Each of such agents and subagents shall be entitled to the same rights of indemnification and reimbursement of fees, costs, and expenses which are otherwise available to Lender under this Agreement and the other Loan Documents, all without further consent or acknowledgment of, or notice to, Debtor or any other Credit Party.

20. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and signed by Debtor and Lender. This Agreement and the other Loan Documents are the complete and final expression of the agreement between Lender and Debtor regarding the subject matter hereof and thereof. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

21. **NOTICE.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and shall be effective upon receipt by the noticed party. Acceptable methods for giving notices hereunder shall include first-class U.S. mail, hand-delivery, and nationally recognized commercial courier service. Regardless of the manner in which notice is provided, notices may be sent to the addresses for Lender and Debtor as set forth below the applicable party's signature to this Agreement or to such other address as any party may give to any of the others for such purpose in accordance with this Agreement.

22. **FURTHER ASSURANCES.** Debtor agrees to sign, deliver, and file any additional documents, agreements, instruments, or certifications that Lender may consider necessary or desirable to perfect, continue, and preserve the Secured Obligations and Lender's rights with respect to the Collateral and to effect the transactions contemplated herein and in the other Loan Documents.

23. **CONFIDENTIALITY.** Lender will endeavor to maintain the confidentiality of the information Lender or Lender's agents obtain with respect to Debtor, except that Lender may disclose such information (i) in any litigation, arbitration, or other proceeding involving any Credit Party, the Secured Obligations, or the Loan Documents; (ii) to any of Lender's affiliates; (iii) to any government or governmental or regulatory agency and any self-regulating authority; (iv) to Lender's accountants, auditors, counsel, and advisors; (v) to any of Lender's actual or prospective assignees or participants; (v) as may be required by court order or law, rule, or regulation; (vi) to the extent permitted or contemplated under any Loan Document; and (vii) to any other Person whom Lender reasonably believes to be a creditor of Debtor or any other Credit Party.

24. **NO WAIVER.** No failure or delay on the part of Lender to exercise any right under this Agreement or any other Loan Document or under applicable law shall operate as a waiver hereof or thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

25. **SURVIVAL OF CERTAIN TERMS.** All representations and warranties made in this Agreement and the other Loan Documents shall survive the making of any Advance and the delivery of any other Loan Document and shall continue in full force and effect until Payment in Full.

26. **COUNTERPARTS; ELECTRONIC SIGNATURES.** This Agreement and any amendments, waivers, or consents relating hereto may be executed in any number of counterparts and by different parties hereto or thereto in separate counterparts, each of which when so executed and delivered shall be deemed an original and all of which, when taken together, shall constitute but one and the same instrument. Any signature delivered by a party hereto or to any amendment, waiver, or consent relating hereto by facsimile transmission or by electronic email in Adobe Corporation's Portable Document Format (or PDF) shall be deemed to be an original signature hereto.

27. **ADDITIONAL WAIVERS.** To the extent legally permitted, Debtor additionally waives:

    **A.** The benefit of appraisal as provided under Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

    **B.** The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure;

    **C.** The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

D. All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

28. **EFFECT OF SIGNATURES.** By signing, Debtor agrees to the terms set forth in this Agreement and certifies that Debtor has received a copy of this Agreement and the other Loan Documents and that it has completely read and understands this Agreement.

**IN WITNESS WHEREOF,** Lender and each Debtor have executed and delivered this Agreement as of the date first above written:

**LENDER:**
**AGRIFUND, LLC**

By: ______________________

Name: Don Leapaldt
Title: Area Manager

**Address for Notices:**
420 Throckmorton Street, Suite 1100
Fort Worth, TX 76102

Debtor:

______________________
Zachary Charles Anderson

**Address for Notices:**
Zachary Charles Anderson
15221 82nd ST.
Becker, MN 55308

# EXHIBIT A

# COLLATERAL

FARM PRODUCTS (CROPS): Any and all of Debtor's present and future rights, title, and interest in and to now existing or hereafter arising farm products consisting of harvested or unharvested crops grown, to be grown, or growing on the "Specified Real Property."

"Specified Real Property" includes, but is not limited to, the real property identified as follows:

Minnesota: Benton County FSN# 982, 3647, 6310, 6281, 4533, 407, 6335, 6304, 6280, 6311, 6332, 351, 251, 4639, 4840, 6314, 3702, 1185, 6305, 6309, 3899, 459. Douglas County FSN# 118, 3420. Mille Lacs County FSN# 5604. Sherburne County FSN# 4024, 3057, 2845, 304, 232, 4590.

FARM PRODUCTS (RELATED PROPERTY): Any and all of Debtor's present and future rights, title and interest in and to now existing or hereafter arising farm products consisting of chemicals and fertilizers.

FARM PRODUCTS (SPECIFIED OTHER): Any and all of Debtor's present and future rights, title and interest in and to now existing or hereafter arising farm products described as follows:

All Crops

INVENTORY: Any and all of Debtor's present and future rights, title and interest in all inventory of every type and description, whether now existing or hereafter arising or existing.

EQUIPMENT: Any and all of Debtor's present and future rights, title, and interest in and to all equipment of every type and description, whether now existing or hereafter arising or existing and together with all additions thereto and all substitutions or replacements therefor, and all accessories, attachments, and accessions thereto.

TOGETHER, IN ALL CASES, WITH EACH OF THE FOREGOING:

All rights to payment and payments made in respect of any of the foregoing;

All payments in kind, including without limitation PIK certificates and commodities redeemed or acquired by PIK certificates, in each case, in connection with any of the foregoing, in each case, whether now existing or hereafter arising;

All rights under insurance policies of any kind or nature relating to, insuring, or otherwise covering any of the foregoing, including, without limitation, all rights to receive payments under any such insurance, whether such payments are made in respect of losses, refunds of premiums, or otherwise, in each case, whether now existing or hereafter arising;

All of Debtor's rights under, and payments due to or to become due to Debtor under, any and all federal or state laws, rules, regulations, or programs relating in any way to any of the foregoing, including, without limitation, all rights of payment for participation under or by or through the Commodity Credit Corporation, the Agricultural Conservation Program, the Cropland Conversion Program, the National Wool Act of 1954, the Wheat, Feed Grain, and Cotton Programs of the Agricultural Adjustment Act of 1938, in each case, whether now existing or hereafter arising;

All of Debtor's documents, documents of title, warehouse receipts, and bills of lading evidencing or relating to or issued in connection with any of the foregoing, in each case, whether now existing or hereafter arising;

All of Debtor's general intangibles in any way relating or pertaining to any of the foregoing, including, without limitation, Debtor's books, records, files, computer disks, and software relating in any way to the foregoing, and all rights that Debtor may have with regard thereto, in each case, whether now existing or hereafter arising;

All of Debtor's rights to payment in respect of any diversion and storage payments, seed payments, rebates, gin rebates, elevator rebates, and warehouse rebates; and

All of Debtor's accounts, general intangibles, payment intangibles, tangible chattel paper, electronic chattel paper, letter-of-credit rights, instruments, supporting obligations, documents, documents of title, warehouse receipts, bills of lading, inventory, equipment, farm products, and goods, in each case, constituting proceeds or products (manufactured or otherwise) of the foregoing or covering or relating to any of the foregoing, and all products and proceeds of the foregoing.

EXCLUDED PROPERTY: Any of the foregoing to the contrary notwithstanding, the Collateral shall not include any of

property described below:

a. Farm products consisting in any respect of marijuana or any inventory consisting of marijuana (or any products manufactured from marijuana).

b. Consumer goods.

c. The following property (if any):

None

# EXHIBIT E

## (Financing Statements)

EXHIBIT
E

**Filing Number: 1375555300156**
**Date: 02/21/2023**
**Time: 9:23 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | | |
|---|---|---|---|---|
| Anderson | Zachary | | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 15221 82nd St | Becker | MN | 55308 | USA |

## SECURED PARTY INFORMATION

| ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Agrifund, LLC | | | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 420 Throckmorton St #1100 | Fort Worth | TX | 76102 | USA |

| ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wilmington Trust, N.A, Collateral Agent | | | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 1100 North Market Street | Wilmington | DE | 19890 | USA |

## COLLATERAL

Any and all accessions, additions, replacements, payments for participation in any state or federal farm programs and substitutions (including rights under Commodity Credit Corporation programs, FSA payment in kind, Federal Crop Insurance Program or any general intangibles or programs); all records of any kind related to any of the foregoing; all proceeds (including insurance, general tangibles, general intangibles, rents and account proceeds). Any and all crops/farm products of every kind and description, planted or growing, or to be planted or grown including but not limited to the following: State of Minnesota: Benton County FSN# 982, 3647, 6310, 6281, 4533, 407, 6335, 6304, 6280, 6311, 6332, 351, 251, 4639, 4840, 6314, 3702, 1185, 6305, 6309, 3899, 459. Douglas County FSN# 118, 3420. Mille Lacs County FSN# 5604. Sherburne County FSN# 4024, 3057, 2845, 304, 232, 4590.

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2500 79658

**Filing Number: 1395046500594**
**Date: 06/09/2023**
**Time: 2:39 PM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC3 - Debtor Add - UCC Financing Statement

**ORIGINAL FILING NUMBER:** 1375555300156

**ORIGINAL FILING DATE:** 02/21/2023

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | | |
|---|---|---|---|---|
| Anderson | Zachary | | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 1845 175th Ave NW | Foley | MN | 56329 | USA |

## AUTHORIZING PARTY

**ORGANIZATION'S NAME**
Agrifund, LLC

**ADDITIONAL FILER REFERENCE DATA:**
2576 60593

Filing Number: 1414117500024
Date: 09/29/2023
Time: 8:36 AM
STATE OF MINNESOTA
Office: Office of the Minnesota Secretary of State

# UCC3 - Debtor Change - UCC Financing Statement

**ORIGINAL FILING NUMBER:** 1375555300156

**ORIGINAL FILING DATE:** 02/21/2023

**RETURN ACKNOWLEDGEMENT TO:**
Shelly Strusz
Ag Resource Management
Rochester, MN 55902

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| Anderson | Zachary | Charles | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 1845 175th Ave NW | Foley | Minnesota | 56329 5632 | United States |

## CURRENT RECORD INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL(S)INITIAL(S) |
|---|---|---|
| Anderson | Zachary | C |

## AUTHORIZING PARTY

**ORGANIZATION'S NAME**
Agrifund LLC

**ADDITIONAL FILER REFERENCE DATA:**

**Filing Number: 1414131500024**
**Date: 09/29/2023**
**Time: 8:59 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC3 - Debtor Change - UCC Financing Statement

**ORIGINAL FILING NUMBER:** 1375555300156

**ORIGINAL FILING DATE:** 02/21/2023

**RETURN ACKNOWLEDGEMENT TO:**
Shelly Strusz
Ag Resource Management
Rochester, MN 55902

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| Anderson | Zachary | Charles | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 15221 82nd St | Becker | MN | 55308 | USA |

## CURRENT RECORD INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME |
|---|---|
| Anderson | Zachary |

## AUTHORIZING PARTY

**ORGANIZATION'S NAME**
Agrifund LLC

**ADDITIONAL FILER REFERENCE DATA:**

**Filing Number: 1396136400712**
**Date: 06/16/2023**
**Time: 11:40 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| Anderson | Zachary | C | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 1845 175th Ave NW | Foley | MN | 56329 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
Agrifund, LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 420 Throckmorton St #1100 | Fort Worth | TX | 76102 | USA |

**ORGANIZATION'S NAME**
Wilmington Trust, N.A, Collateral Agent

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1100 North Market Street | Wilmington | DE | 19890 | USA |

## COLLATERAL

Any and all accessions, additions, replacements, payments for participation in any state or federal farm programs and substitutions (including rights under Commodity Credit Corporation programs, FSA payment in kind, Federal Crop Insurance Program or any general intangibles or programs); all records of any kind related to any of the foregoing; all proceeds (including insurance, general tangibles, general intangibles, rents and account proceeds). Any and all now owned and hereafter acquired machinery, equipment, furniture, furnishings and fixtures, of every type and description together with all accessories, attachments, accessions, substitutions, replacements and additions thereto, whether added now or later. Any and all crops/farm products of every kind and description, planted or growing, or to be planted or grown including but not limited to the following: State of Minnesota Benton County FSN# 982, 3647, 6310, 6281, 4533, 407, 6335, 6304, 6280, 6311, 6332, 351, 251, 4639, 4840, 6314, 3702, 1185, 6305, 6309, 3899, 459. Douglas County FSN# 118, 3420. Mille Lacs County FSN# 5604. Sherburne County FSN# 4024, 3057, 2845, 304, 232, 4590.

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2581 76027

**Filing Number: 1414162800020**
**Date: 09/29/2023**
**Time: 9:35 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC3 - Debtor Change - UCC Financing Statement

**ORIGINAL FILING NUMBER:** 1396136400712

**ORIGINAL FILING DATE:** 06/16/2023

**RETURN ACKNOWLEDGEMENT TO:**
Shelly Strusz
Ag Resource Management
Rochester, MN 55902

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| Anderson | Zachary | Charles | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 1845 175th Ave NW | Foley | Minnesota | 56329 | United States |

## CURRENT RECORD INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL(S)INITIAL(S) |
|---|---|---|
| Anderson | Zachary | C |

## AUTHORIZING PARTY

**ORGANIZATION'S NAME**
Agrifund LLC

**ADDITIONAL FILER REFERENCE DATA:**

**Filing Number: 1301401800029**
**Date: 03/08/2022**
**Time: 6:59 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Stevenson Drive
Springfield, IL 62703

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| Anderson | Zachary | Charles | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 15221 82nd St | Becker | MN | 55308 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
Agrifund, LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 420 Throckmorton St #1100 | Fort Worth | TX | 76102 | USA |

**ORGANIZATION'S NAME**
Wilmington Trust, N.A, Collateral Agent

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1100 North Market Street | Wilmington | DE | 19890 | USA |

## COLLATERAL

Any and all accessions, additions, replacements, payments for participation in any state or federal farm programs and substitutions (including rights under Commodity Credit Corporation programs, FSA payment in kind, Federal Crop Insurance Program or any general intangibles or programs); all records of any kind related to any of the foregoing; all proceeds (including insurance, general tangibles, rents and account proceeds). Any and all crops/farm products of every kind and description, planted or growing, or to be planted or grown including but not limited to the following: Minnesota: Benton County FSN# 982, 3647, 6310, 6281, 4533, 407, 6335, 6304, 6280, 6311, 6332, 351, 251, 4639, 4840, 6314, 3702, 1185, 421, 6305, 6309, 3899, 459. Douglas County FSN# 118, 3420. Mille Lacs County FSN# 5604. Sherburne County FSN# 4024, 3057, 2845, 304, 232, 4590.

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**

# **EXHIBIT F**

## State Court Order in MN Case No. 05–CV–24–1032

EXHIBIT
F

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF BENTON | SEVENTH JUDICIAL DISTRICT

Agrifund, LLC,

Plaintiff,

v.

Zachary Anderson and Robert Waldon John Anderson,

Defendants.

Case No.: 05-CV-24-1032
Case Type: Civil-Other
Judge: Raupp, Robert

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT**

**(DEFENDANT ZACHARY ANDERSON)**

Plaintiff Agrifund, LLC ("Plaintiff") seeks entry of default judgment for the relief requested in the Amended Complaint against Defendant Zachary Anderson ("Defendant") on Count I (money judgment) and Count II (claim and delivery of collateral) pursuant to Minnesota Rules of Civil Procedure 54.02 and 55. This matter came before the Court on July 18, 2024. Attorney Caren Stanley appeared on behalf of Plaintiff. Any other appearances were noted on the record. The Court, based upon all the pleadings, filings, and proceedings herein, and being fully advised in this matter, makes the following:

## FINDINGS OF FACT

4. Plaintiff is, and at all times relevant to this matter was, a Delaware limited liability company with a principal office located at 420 Throckmorton Street, Ste. 1100, Fort Worth, TX 76102.

2. Defendant is a resident of Foley, Minnesota.

3. Venue is appropriate in Benton County, Minnesota because the personal property at issue in this proceeding is located in Benton County, Minnesota.

FILED In District Court
State of Minnesota
Dated: 8-15-24

4. Defendant is obligated to Plaintiff pursuant to the terms of the following instruments:

a. A Demand Promissory Note of date March 3, 2022 in the original principal sum of $1,848,036.00 ("2022 Note"). Interest accrues on the unpaid principal balance of the 2022 Note at the initial rate of 9.50% per annum (subject to change as provided for in the 2022 Note). The 2022 Note required payment of all outstanding principal plus all accrued unpaid interest upon demand but no later than on February 15, 2023. Pursuant to a Modification Agreement dated February 23, 2023 (the "2022 Modification Agreement"), the maturity date of the 2022 Note was extended to May 16, 2023. *See* Kivett Aff., ¶ 2(a); **Exhibit A**.

b. A Demand Promissory Note of date February 20, 2023 in the original principal sum of $1,749,488.00 ("2023 Note"). Interest accrues on the unpaid principal balance of the 2023 Note at the rate of 12.95% per annum. The 2023 Note required payment of all outstanding principal plus all accrued unpaid interest upon demand but no later than March 15, 2024. *See* Kivett Aff., ¶ 2(b); **Exhibit B**.

c. The above instruments are collectively referred to as the "Notes".

5. To secure the debts due on the Notes, the Defendant executed and delivered to Plaintiff the following:

a. Security Agreement of date March 3, 2022 (the "2022 Security Agreement") granting an interest in the following personal property:

MINNESOTA JUDICIAL BRANCH

Any and all accessions, additions, replacements, payments for participation in any state or federal farm programs and substitutions (including rights under Commodity Credit Corporation programs, FSA payment in kind, Federal Crop Insurance Program or any general intangibles or programs); all records of any kind related to any of the foregoing; all proceeds (including insurance, general tangibles, general intangibles, rents and account proceeds). Any and all now owned and hereafter acquired machinery, equipment, furniture, furnishings and fixtures, of every type and description together with all accessories, attachments, accessions, substitutions, replacements and additions thereto, whether added now or later. Any and all crops/farm products of every kind and description, planted or growing, or to be planted or grown including but not limited to the following: State of Minnesota Benton County FSN# 982, 3647, 6310, 6281, 4533, 407, 6335, 6304, 6280, 6311, 6332, 351, 251, 4639, 4840, 6314, 3702, 1185, 6305, 6309, 3899, 459, Douglas County FSN# 118, 3420, Mille Lacs County FSN# 5604, Sherburne County FSN# 4024, 3057, 2845, 304, 232, 4590.

(the "Personal Property Collateral"). *See* Kivett Aff., ¶ 3(a); **Exhibit C**.

b. Security Agreement of date February 20, 2023 (the "2023 Security Agreement") granting an interest in the Personal Property Collateral. *See* Kivett Aff., ¶ 3(b); **Exhibit D**.

6. Plaintiff's liens in the Personal Property Collateral were perfected by the filing of financing statements with the Minnesota Secretary of State with the initial filing on March 8, 2022. *See* Kivett Aff., ¶ 4; **Exhibit E**.

7. Defendant has defaulted under the Notes by failing to pay at maturity. As of July 18, 2024, there remains due and owing to Plaintiff the following amounts:

a. Pursuant to the 2022 Note (excluding attorneys' fees, costs, etc.):

| | |
|---|---|
| $114,575.60 | Principal |
| $4,816.88 | Interest |
| $7,031.52 | Fees Due |
| $48.66 | Per Diem (both 9.50% regular and 6.0% default) |
| **$126,424.00** | Payoff (7/18/2024) |

b. Pursuant to the 2023 Note (excluding attorneys' fees, costs, etc.):

| | |
|---|---|
| $1,749,488.00 | Principal |

| | |
|---|---|
| $246,176.82 | Interest |
| $1,681.48 | Fees Due |
| $908.30 | Per Diem (both 12.950% regular and 6.0% default) |
| **$1,997,346.30** | Payoff (7/18/2024) |

*See* Kivett Aff., ¶ 5.

8. Plaintiff is entitled to attorneys' fees in collection of amounts due and owing as follows:

> 7. **COLLECTION EXPENSES.** If this Demand Note is placed in the hands of an attorney for collection following the occurrence of an Event of Default, Borrower agrees to pay to Lender upon demand all costs and expenses, including, without limitation, all reasonable attorneys' fees and court costs incurred by Lender in connection with the enforcement or collection of this Demand Note (whether or not any action has been commenced by Lender to enforce or collect this Note) or in successfully defending any counterclaim or other legal proceeding brought by Borrower contesting Lender's right to collect the outstanding Principal and all other sums due hereunder. All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein or any default rate of interest provided herein, from the date of payment by Lender until repaid in full.

*See* **Exhibit B**, ¶ 7. Plaintiff has incurred attorneys' fees in the sum of $13,905.00 from October 20, 2023 through July 17, 2024. *See* Kivett Aff., ¶ 6.

9. The Defendant has failed to deliver to Plaintiff the Personal Property Collateral pledged as security on the indebtedness owing on the Notes. *See* Kivett Aff., ¶ 8.

10. Plaintiff is entitled to immediate possession of the Personal Property Collateral pursuant to the Security Agreements which provide that Defendant is obligated to deliver the Personal Property Collateral to Plaintiff for sale or other disposition. *See* **Exhibits C and D** at ¶ 14 (REMEDIES). The Defendant, being in default as set forth above, is wrongfully detaining the Personal Property Collateral from Plaintiff. *See* Kivett Aff., ¶ 9.

MINNESOTA JUDICIAL BRANCH

## CONCLUSIONS OF LAW

11. This Court has jurisdiction over the subject matter of this action and over Plaintiff and Defendant.

12. Defendant was personally served with the Amended Summons and Amended Complaint on June 24, 2024 and no appearance or answer has been filed. Accordingly, Defendant is in default under Minn. R. Civ. P. 55. Plaintiff has requested the Court enter default judgment pursuant to Minn. R. Civ. P. 54.02 against Defendant on Count I (money judgment) and Count II (claim and delivery) of the Amended Complaint and the Court finds there is no just reason for delay with respect to entry of judgment on Counts I and II of the Amended Complaint.

13. Plaintiff is the lawful holder of the Notes and Security Agreements and is entitled to enforce the same.

14. The Notes and Security Agreements are valid instruments enforceable in accordance with their terms.

15. Judgment shall be entered in Plaintiff's favor and against Defendant Zachary Anderson in the sum of $2,123,770.31 plus attorneys' fees in the sum of $13,905.00 for a total judgment amount of $2,137,675.31 plus costs and disbursements as taxed by the clerk of court.

16. Defendant shall deliver to Plaintiff immediately the Personal Property Collateral for purposes of sale and/or disposition by commercially reasonable means. If the Defendant fails to deliver the Personal Property Collateral to the Plaintiff, the Plaintiff, with such assistance from the Benton County Sheriff or other law enforcement personnel as have jurisdiction, shall be permitted to seize the same. In recovering the Personal Property Collateral, Plaintiff, the Sheriff of Benton County and such other law enforcement personnel

as have jurisdiction, shall be permitted to enter upon the real property of the Defendant and any third parties and force access into any structures located on said real property in which the Personal Property Collateral is situated.

17. If the Personal Property Collateral or any of it is no longer located within or about the Defendant's business or home premises, the Defendant shall disclose to the Benton County Sheriff or such other law enforcement personnel as have jurisdiction the location of the Personal Property Collateral.

18. If the Defendant does not deliver or disclose the location of the Personal Property Collateral, requiring the Defendant to appear before the Court at a specified time and place, to give testimony as to the location of the Personal Property Collateral and to show cause why an order should not be entered finding the Defendant in contempt of court for failing to deliver or disclose the location of the Personal Property Collateral.

19. The Plaintiff is hereby immediately authorized to sell or otherwise dispose of the Personal Property Collateral. Proceeds may be applied first to the reasonable expenses of recovery and disposition, including the Plaintiff's reasonable costs incurred in connection therewith, and the remainder to satisfaction of the indebtedness of the Defendant to the Plaintiff.

20. Plaintiff shall not be required to post a bond as condition of recovery or disposition of the Personal Property Collateral.

21. Based on the above Findings of Fact and Conclusions of Law, the Court makes the following:

MINNESOTA JUDICIAL BRANCH

**ORDER FOR JUDGMENT**

PURSUANT TO MINN. R. CIV. P. 54.02 AND THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED IMMEDIATELY.

BY THE COURT:

Dated: 8-15-24

Judge of District Court

I certify the above order constitutes the Judgment of the Court.
Court Administrator
By Nicole Kampa
Date 8-16-2024

MINNESOTA JUDICIAL BRANCH

State of Minnesota
Benton County

District Court
Seventh Judicial District

Court File Number: **05-CV-24-1032**
Case Type: Contract

# Notice of Entry and Docketing of Judgment

**FILE COPY**

**Agrifund, LLC vs Zachary Anderson, Robert Waldon John Anderson**

You are hereby notified that a judgment has been entered and docketed in the above entitled matter.

| Judgment Information | |
|---|---|
| Entered Date | **August 16, 2024** |
| Docketed Date | August 16, 2024 |
| Docketed Time | 10:14 AM |
| Debtor(s) | **Zachary Anderson.** |
| Creditor(s) | **Agrifund, LLC** |
| | |
| Monetary Award: | |
| Monetary Amount: | $2,137,675.31 |
| | |
| | |
| | |
| | |

A true and correct copy of this notice has been served pursuant to Minnesota Rules of Civil Procedure, Rule 77.04. Please be advised that notices sent to attorneys are sent to the lead attorney only.

Note: Costs and interest will accrue on any money judgment amounts from the date of entry until the judgment is satisfied in full.

Dated: August 16, 2024

Megan Bergman
Court Administrator
Benton County District Court
615 Highway 23, PO Box 189
Foley MN 56329
(320) 968-5205

FILED in District Court
State of Minnesota
Dated: 8-16-24

MINNESOTA JUDICIAL BRANCH

# EXHIBIT G

**(Judgment in a Criminal Case – Robert Waldon John Anderson)**

Filed in District Court
State of Minnesota
6/21/2024 9:44 AM

EXHIBIT
G



# UNITED STATES DISTRICT COURT
**District of Minnesota**

UNITED STATES OF AMERICA

v.

**ROBERT WALDON JOHN ANDERSON**
aka: Robert Walden John Anderson

**JUDGMENT IN A CRIMINAL CASE**

Case Number: **21-CR-48-NEB (1)**
USM Number: **43687-509**
**Douglas Olson**
Defendant's Attorney

## THE DEFENDANT:

☒ pleaded guilty to counts to Count 1 of the Felony Information
☐ pleaded nolo contendere to count(s) which was accepted by the court
☐ was found guilty on count(s) after a plea of not guilty

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 15:714m(c) CONVERSION OF CCC SECURITY | 07/01/2019 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)
☐ Count(s) ☐ is ☐ are dismissed on the motion of the United States

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**November 22, 2021**
Date of Imposition of Judgment

**s/Nancy E. Brasel**
Signature of Judge

**NANCY E. BRASEL**
**UNITED STATES DISTRICT JUDGE**
Name and Title of Judge

**November 30, 2021**
Date

DEFENDANT: ROBERT WALDON JOHN ANDERSON
CASE NUMBER: 21-CR-48-NEB (1)

# PROBATION

The defendant is hereby sentenced to probation for a term of: 3 years as to count 1.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☒ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. (*check if applicable*)
4. ☒ You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)
5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)
6. ☐ You must participate in an approved program for domestic violence. (*check if applicable*)
7. ☒ You must make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664. (*check if applicable*)
8. You must pay the assessment imposed in accordance with 18 U.S.C. § 3013.
9. If this judgment imposes a fine, you must pay in accordance with the Schedule of Payments sheet of this judgment.
10. You must notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: ROBERT WALDON JOHN ANDERSON
CASE NUMBER: 21-CR-48-NEB (1)

# STANDARD CONDITIONS OF PROBATION

As part of your probation, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at www.uscourts.gov.

Defendant's Signature ______________________________ Date ______________

Probation Officer's Signature ______________________________ Date ______________

DEFENDANT: ROBERT WALDON JOHN ANDERSON
CASE NUMBER: 21-CR-48-NEB (1)

# ADDITIONAL PROBATION TERMS

a. The defendant shall perform 150 hours of community service, as approved by the probation officer.

b. The defendant shall provide the probation officer access to any requested financial information, including credit reports, credit card bills, bank statements, and telephone bills.

c. The defendant shall be prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

DEFENDANT: ROBERT WALDON JOHN ANDERSON
CASE NUMBER: 21-CR-48-NEB (1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $100.00 | $1,403,578.40 | $.00 | $.00 | $.00 |

☐ The determination of restitution is deferred until An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. §3664(i), all nonfederal victims must be paid before the United States is paid.

| Name and Address of Payee | ***Total Loss | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| FARM SERVICE AGENCY-CCC<br>PO BOX 419205<br>COLLECTION OPERATIONS<br>STOP 8212<br>KANSAS CITY, MO 64141-6205 | | $1,403,578.40 | |
| TOTALS: | $0.00 | $1,403,578.40 | 0.00% |
| **Payments are to be made to the Clerk, U.S. District Court, for disbursement to the victim.** | | | |

☒ Restitution amount ordered pursuant to plea agreement $ 1,403,578.40

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the ☐ fine ☒ restitution

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: ROBERT WALDON JOHN ANDERSON
CASE NUMBER: 21-CR-48-NEB (1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payments of $ 1,403,578.40 due immediately, balance due

☐ not later than , or

☒ in accordance ☐ C, ☐ D, ☐ E, or ☒ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal ____________ *(e.g., weekly, monthly, quarterly)* installments of $ ____________ over a period of ______________ *(e.g., months or years)*, to commence _________ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal 20 *(e.g., weekly, monthly, quarterly)* installments of $ ____________ over a period of ______________ *(e.g., months or years)*, to commence _________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within ____________ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒ Special instructions regarding the payment of criminal monetary penalties:
**It is ordered that the Defendant shall pay to the United States a special assessment of $100.00 for Count 1, which shall be due immediately. Said special assessment shall be paid to the Clerk, U.S. District Court.**
**Restitution in the amount $1,403,578.40, is due to Farm Service Agency-CCC. Payments of not less than $500 per month are to be made over a period of 3 years commencing 30 days after the date of this judgment. Payments are to be made payable to the Clerk, U.S. District Court, for disbursement to the victim. The interest requirement is waived in accordance with 18 U.S.C. § 3612(f)(3).**
**The defendant's obligation to pay the full amount of restitution continues even after the term of supervision has ended, pursuant to federal law. See 18 U.S.C. § 3613. If the defendant is unable to pay the full amount of restitution at the time supervision ends, the defendant may work with the U.S. Attorney's Office Financial Litigation Unit to arrange a restitution payment plan.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.
The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|

☐ The defendant shall pay the cost of prosecution.
☐ The defendant shall pay the following court cost(s):
☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA Assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.